Squire Patton Boggs (US) LLP
Helen H. Yang (State Bar # 241170)
helen.yang@squirepb.com
Shaun Kim (State Bar # #307812)
shaun.kim@squirepb.com
Neil E. Chan (State Bar # 321864)
neil.chan@squirepb.com
555 South Flower Street, Suite 3100
Los Angeles, California  90071
Telephone:  +1 213 624 2500
Facsimile:  +1 213 623 4581

Attorneys for Plaintiffs
VEOLIA NORTH AMERICA, LLC and
VEOLIA ES TECHNICAL SOLUTIONS, L.L.C.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEOLIA NORTH AMERICA, LLC, a Delaware limited liability company; and VEOLIA ES TECHNICAL SOLUTIONS, L.L.C., a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.  **'21CV2096 TWR BGS**<br><br>**PLAINTIFFS VEOLIA NORTH AMERICA, LLC'S AND VEOLIA ES TECHNICAL SOLUTIONS, L.L.C.'S COMPLAINT FOR:**<br><br>**1. BREACH OF FIDUCIARY DUTY**<br>**2. BREACH OF WRITTEN CONTRACT;**<br>**3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>**4. NEGLIGENT MISREPRESENTATION** |

## I.   INTRODUCTION

1.   Plaintiffs Veolia North America, LLC ("Veolia NA") and Veolia ES Technical Solutions, L.L.C. ("Veolia ES" and together with Veolia NA, "Veolia" or "Plaintiffs") retained Defendant Jones Lang LaSalle Americas, Inc. ("JLL") to provide real estate broker services for, among other things, the vetting of candidate locations for Veolia's Environmental Storage Sites ("Environmental SS").

Environmental SS locations are facilities or buildings where the portfolio of assorted environmental services that Veolia provides are housed. As part of this vetting process, JLL, as Veolia's broker and fiduciary, was responsible for identifying and analyzing potential Environmental SS locations, including for their compliance with all applicable laws and regulations related to Veolia's use of the property as a storage site for environmental waste.

2. This dispute arises out of the failure by JLL to adequately perform its broker and fiduciary duties to Veolia relating to a new Environmental SS location for Veolia's operations in San Diego, California. More specifically, JLL was responsible for identifying and analyzing usable sites for Veolia, but failed to do so. As a result of JLL's failure, Veolia suffered damages in excess of $1,000,000.00 in having entered into a lease for a location which Veolia later discovered could not be used for its desired purpose without violating California law.

## II.   PARTIES

3. Plaintiff Veolia North America, LLC is a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. The sole member of Veolia North America, LLC is Veolia North America, Inc., a Delaware corporation with its principal place of business located in Wilmington, Delaware.

4. Plaintiff Veolia ES Technical Solutions, L.L.C. is a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. The sole member of Veolia ES Technical Solutions, L.L.C. is Veolia Environmental Services North America LLC, a Delaware LLC with its principal place of business located in Boston, Massachusetts. The sole member of Veolia Environmental Services North America LLC is Veolia North America, Inc., a Delaware corporation with its principal place of business located in Wilmington, Delaware.

5. Plaintiffs are informed and believe and thereupon allege that at all times mentioned herein, Defendant Jones Lang LaSalle Americas, Inc. is a Maryland corporation with its principal place of business located at Chicago, Illinois. Plaintiffs are further informed and believe and thereupon allege that JLL is a registered business that conducted business in the County of San Diego, State of California.

6. The true names and capacities of the defendants named herein as Does 1 through 10, inclusive, are presently unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereupon allege that these fictitiously named defendants, and each of them, are responsible, by their acts and omissions or both, for the matters hereinafter alleged. At such time as the true names and capacities of these fictitiously named Defendants become known to Plaintiffs, they will take the necessary steps to amend the Complaint so that their names and capacities are identified.

### III.   JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds the minimum jurisdictional amount of $75,000.00, exclusive of interest and costs.

8. Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391(b)(2). The dispute arose in San Diego, California, the real property that is the subject of this dispute is located in this Judicial District, as well as the evidence and witnesses.

### IV.   STATEMENT OF FACTS

9. On July 1, 2016, JLL and Veolia entered into a Real Estate Services Agreement ("Agreement"). The Agreement governed the duties of JLL to perform specific services for Veolia, including but not limited to the duty to, "identify, analyze, negotiate," and ultimately assist Veolia in the leasing of new space for its Environmental SS locations. A true and correct copy of the Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

10. Environmental SS locations house Veolia's environmental services business, and include facilities such as EPA regulated 10-day transfer facilities, incineration sites, reclaim and recycling operations of hazardous and non-hazardous wastes sites, and other buildings for the portfolio of assorted environmental services that Veolia provides.

11. Under the Agreement, JLL served as Veolia's national real estate broker. In such role, JLL handled all of Veolia's requests for new leased locations ranging from Environmental SS locations to Veolia's new corporate headquarters. At the inception of each search for a new leased location, Veolia's employees would hold a kick-off call with JLL and its brokers wherein the general parameters of Veolia's needs were discussed. JLL would then search the market to locate and refer viable properties that fit Veolia's requirements. From there, JLL would arrange for Veolia personnel to tour sites to identify locations based on Veolia's business preferences, including but not limited to price, size, or other logistical considerations such as fencing, storage, or travel time.

12. Veolia has never performed environmental due diligence on sites prior to JLL selecting them as candidates, and has instead relied upon JLL's services to "identify [and] analyze" new sites pursuant to the Agreement. Notably, the Agreement does not indicate that Veolia is responsible for environmental due diligence.

13. In or around April of 2019, Veolia informed JLL that Veolia needed a new Environmental SS location in vicinity of San Diego, California. As was customary between the parties, Veolia held a kick-off call with JLL's brokers wherein Veolia provided a document titled "Veolia Requirements Spec Sheet" ("Spec Sheet") detailing requirements for the new Environmental SS location, including the "crucial" requirement that the new site "[w]ill need to be approved for 10-day haz-waste transfer permit" under California law (the "10-day Permit") as regulated by the California Department of Toxic Substance Control ("DTSC").

14. DTSC publishes a fact sheet titled "Managing Hazardous Wastes at Transfer Facilities" ("DTSC Fact Sheet") that is readily available on its website. The DTSC Fact Sheet details the various federal and state regulations that govern any "Transfer Facility," defined as "any hazardous waste facility that is not an on site facility, i.e. an offsite facility, that is related to the transportation of hazardous waste, including but not limited to, loading docks, parking areas, storage areas, and other similar areas where shipments of hazardous waste are held during the normal course of transportation." The Environmental SS location JLL was tasked to find clearly met the definition of a Transfer Facility.

15. Critically, the DTSC Fact Sheet states, "Transfer facilities beginning initial operations on or after January 1, 2005 *must be located a minimum of 500 feet away from a structure that is used for special uses such as schools, day care centers for children, human hospitals, and permanently occupied human habitations including mobile homes installed for the use as permanently occupied human habitation*." (emphases added.) JLL was required to meet this criteria for the Environmental SS location.

16. On April 23, 2019, JLL's Vice President of Integrated Portfolio Services, Mr. David Goldberg, sent an email to Veolia's Director of Real Estate, Marie Bernhard, wherein JLL sent Veolia a JLL market survey "based on the local team's requirements." Also attached to Mr. Goldberg's email was Veolia's Spec Sheet, demonstrating JLL's knowledge that the Environmental SS location had to comply with all pertinent DTSC requirements and be approved by DTSC.

17. On May 7, 2019, JLL's Vice President of Supply Chain and Logistics Solutions, Joe Anderson ("Anderson"), emailed Ms. Bernhard with additional locations to consider. Among them was a commercial property located at 7831 Ostrow Street, San Diego, California ("Ostrow").

18. Over the remainder of 2019, JLL continued to send market surveys to Veolia for an array of candidate sites, repeatedly representing to Veolia that the candidate sites fit Veolia's stated requirements. JLL arranged for Veolia's local operations manager, Daniel Goddeyne, to tour multiple facilities including Ostrow. At no time did Anderson or anyone at JLL raise the fact that the Ostrow site could not qualify for a 10-day Permit.

19. In January 2020, because JLL presented Ostrow as a viable option, Ostrow was selected as the new Environmental SS location. JLL began in earnest to negotiate terms of a lease with Ostrow's landlord. On January 29, 2020, Veolia sent an email to JLL stressing that JLL should be "aware of the restrictions in securing a 10-day transfer." Veolia further stated that "the transfer facilities must be located a minimum of 500 feet away from a structure that is used for special uses such as schools, child day care centers, hospitals, etc." In that same email, Veolia provided a link to a DTSC Fact Sheet setting forth the distance requirements necessary for the facility to qualify for the 10-day Permit.

20. The DTSC Fact Sheet provided to JLL specifically stated that "[t]ransfer facilities beginning initial operations on or after January 1, 2005 must be located a minimum of 500 feet away from a structure that is used for special uses such as schools, day care centers for children, human hospitals, and ***permanently occupied human habitations including mobile homes installed for the use as permanently occupied human habitation***." (emphases supplied).

21. In response to Veolia's explicit instructions about qualifying for the 10-day Permit, JLL committed to research the distance requirement in relation to Ostrow. On January 30, 2020, JLL sent an email to Veolia indicating it "had our Research Analyst look into [distance requirements]. He did find an Elementary School, but it is on the other side of the freeway (I-805) and is about 1,200 SF from the facility. Please see his notes below as well as an aerial from Google Earth showing the measurement…" JLL further indicated "[t]he closest school is Ross

- 6 -
COMPLAINT

Elementary, that is 1,100 ft away on the other side of the 805…The closest day care is just beyond that, and the closest hospital is 2 miles away."

22. The DTSC Fact Sheet states, in relevant part, that any transfer facility must be at least 500 feet from any school, day care, hospital, *or permanent human habitation*. JLL failed to investigate the distance between Ostrow and the final category, permanently occupied human habitations (i.e. single-family homes or apartments).

23. Relying on JLL's confirmation that distance requirements had been met, Veolia ES signed the lease with Ostrow's landlord on or about March 12, 2020.

24. After the lease was signed, Veolia discovered that Ostrow was within 500 feet of residential housing located on the other side of the I-805 freeway and thus ineligible for a 10-day Permit. When Veolia notified JLL of the issue and asked how this critical component was missed, JLL admitted to Veolia that it had not read the DTSC Fact Sheet.

25. JLL did not find a solution to the predicament it created, leaving Veolia stuck with an eight-year lease on a property that was not suitable for Veolia's intended use.

26. Based on the foregoing, Veolia has suffered damages in an amount to be proved at trial.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Breach of Fiduciary Duty

(Against All Defendants)

27. Plaintiffs incorporate Paragraphs 1 through 26, inclusive, as though fully set forth herein.

28. JLL was Veolia's real estate broker. JLL voluntarily accepted a fiduciary role with respect to Veolia, including the duty to act with the utmost good

faith, loyalty, and in the best interest of Veolia. By the virtue of its role as real estate broker, JLL owed a fiduciary duty to Veolia.

29. JLL acted on Veolia's behalf for purposes of, among other things, vetting of candidate locations for Veolia's Environmental SS and ensuring all requirements were met related to Veolia's storage sites for environmental waste.

30. JLL failed to act as a reasonably careful real estate broker would have acted under the same or similar circumstances. Specifically, JLL breached its fiduciary duty by failing to discover and disclose the material fact that Ostrow was not in compliance with the applicable laws and regulations for Veolia's intended use, specifically, the DTSC regulations governing a 10-day Permit, despite the fact that on numerous occasions Veolia had made it known that such a requirement was critical to Veolia's needs. In fact, JLL represented that it had researched the requirements of the 10-day Permit and found no issues with Ostrow, only later admitting that it failed to read the documents containing the requirements.

31. In reliance upon JLL's services and representations, Veolia entered into a lease with Ostrow's landlord. However, because Ostrow was not compliant with the applicable laws and regulations for Veolia's intended use, Veolia suffered harm.

32. JLL's conduct was a substantial if not the sole cause of the harm to Veolia.

## SECOND CAUSE OF ACTION

Breach of Contract

(Against All Defendants)

33. Plaintiffs incorporate Paragraphs 1 through 32, inclusive, as though fully set forth herein.

34. Veolia NA and JLL entered into the Agreement, which provided services to Veolia NA and its subsidiary Veolia ES. JLL was engaged to find a new Environmental SS location in San Diego, California pursuant to the terms of the

Agreement, including the duty to "identify [and] analyze" potential sites to determine whether they were suitable for Veolia's needs.

35. Veolia performed all of its required obligations and covenants under the Agreement. To the extent Veolia did not perform all of its obligations, they were excused by JLL's nonperformance of its obligations under the Agreement.

36. All of the conditions required by the Agreement for JLL's performance occurred, and were not excused or waived by Veolia.

37. JLL breached the Agreement by failing to properly identify and analyze potential sites. Specifically, JLL did not disclose the material fact that Ostrow was not in compliance with applicable laws and regulations for Veolia's intended use, despite the fact that on numerous occasions Veolia had made it known that compliance with such requirements was critical. In fact, JLL represented that it had researched the requirements of the 10-day Permit and found no issues with Ostrow, only later admitting that it failed to read the documents containing the requirements.

38. As a direct and proximate result of JLL's breach of the Agreement, Veolia has suffered harm in the form of actual and consequential damages, in an amount to be determined according to proof at trial.

39. Section 11 of the Agreement provides that in the event either party commences an action with respect to the Agreement, the Court shall award the prevailing party a reasonable sum of attorneys' fees, costs, and expenses. JLL breached the Agreement in the manner set forth above and Veolia has been compelled to commence litigation to enforce its rights thereunder.

### THIRD CAUSE OF ACTION
Breach of Implied Covenant of Good Faith and Fair Dealing
(Against All Defendants)

40. Plaintiffs incorporate Paragraphs 1 through 39, inclusive, as though fully set forth herein.

41.   By entering into the Agreement, the parties impliedly agreed to deal fairly with each other, to do everything that the Agreement presupposes that each party will do to accomplish the purposes of the Agreement, and to refrain from doing anything which would frustrate the purposes of the Agreement.

42.   JLL breached the implied covenant of good faith and fair dealing by failing to discover and disclose the material fact that Ostrow was not in compliance with the applicable laws and regulations for Veolia's intended use, specifically, the DTSC regulations governing a 10-day Permit, despite the fact that on numerous occasions Veolia had made it known that such a requirement was crucial to Veolia's needs.  In fact, JLL represented that it had researched the requirements of the 10-day Permit and found no issues with Ostrow, only later admitting that it failed to read the documents containing the requirements.

43.   As a direct and proximate result of JLL's breach of the implied covenant of good faith and fair dealing, Veolia has suffered harm in the form of actual and consequential damages, in an amount to be determined according to proof at trial.

### FOURTH CAUSE OF ACTION

Negligent Misrepresentation

(Against All Defendants)

44.   Plaintiffs incorporate Paragraphs 1 through 43, inclusive, as though fully set forth herein.

45.   JLL, as the real estate broker of Veolia, represented that Ostrow had been vetted and was in compliance with the applicable laws and regulations for Veolia's intended use, specifically, the DTSC regulations governing a 10-day Permit. In fact, JLL represented that it had researched the requirements of a 10-day Permit and found no issues with Ostrow.

46.   However, JLL's representations were not true.  Indeed, JLL later admitted that it failed to read the documents containing the requirements.

47. JLL had no reasonable grounds to believe the representations were true when it made them.

48. JLL intended that Veolia rely on these representations.

49. Veolia reasonably relied on JLL's representations. Indeed, in reliance upon JLL's representations, Veolia entered into a lease with Ostrow' s landlord. However, because Ostrow was not compliant with the applicable laws and regulations for Veolia's intended use, Veolia suffered harm.

50. Veolia' reliance on JLL's representations were a substantial if not sole cause of the harm to Veolia.

## PRAYER FOR RELIEF

1. For actual damages in an amount to be determined according to proof at trial;;
2. For consequential in an amount to be determined according to proof at trial;
3. For attorneys' fees, costs, and expenses in an amount to be determined according to proof at trial;
4. For interest as provided by law;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court may deem just and proper.

Dated:  December 16, 2021                      Squire Patton Boggs (US) LLP


By:        /s/  Helen H. Yang
                Helen H. Yang
                Shaun Kim
                Neil E. Chan
Attorneys for Plaintiffs
VEOLIA NORTH AMERICA, LLC and
VEOLIA ES TECHNICAL
SOLUTIONS, L.L.C.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury of all issues so triable.

Dated: December 16, 2021       Squire Patton Boggs (US) LLP

By:       /s/ Helen H. Yang
        Helen H. Yang
        Shaun Kim
        Neil E. Chan
Attorneys for Plaintiffs
VEOLIA NORTH AMERICA, LLC and
VEOLIA ES TECHNICAL
SOLUTIONS, L.L.C.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-9271-6743/3/AMERICAS